In the Matter of the Estate of HENRY W. DeFOREST, Deceased.

Surrogate's Court, Nassau County, May 22, 1939.

*Lessne & Raskin*, for the claimants.

*DeForest, Cullom & Elder*, for Julia Noyes DeForest and Johnston DeForest, as executors, etc.

HOWELL, S. The petitioner, Edward Ketchum, seeks a construction of paragraph " second " of the testator's will and urges that it be so construed that the petitioner is entitled to a legacy thereunder.

In order properly to construe such paragraph, it is necessary to take into consideration the surrounding circumstances in the light of which the paragraph in question should be interpreted.

The testator had homes in the city of New York and at Cold Spring Harbor in the town of Oyster Bay. He and his wife spent the winter in New York city and the summer, usually, at Cold Spring Harbor, moving from city to country usually in April and from country to city in November. His country estate consisted of slightly over 100 acres and upon it was his large residence, a garage with an apartment for a chauffeur, and one or more cottages. The servants in the house consisted of butlers, maids and cooks. They accompanied Mr. and Mrs. DeForest to New York in the winter and to Cold Spring Harbor in the summer, lived in the house in each case and were paid by Mrs. DeForest. The same is true of the chauffeur and houseman, except that the chauffeur lived in an apartment in the garage, in one room of which the houseman lodged. These servants were employed by Mr. or Mrs. DeForest and acted under their personal supervision and orders. As superintendent of his estate at Cold Spring Harbor, Mr. DeForest employed John G. Melrose who, in his turn, hired employees for work on the estate generally, supervised and gave them orders and paid them monthly out of moneys furnished by Mr. DeForest. At times, such employees numbered as many as twenty, but, at testator's death, there were only about twelve. They were needed mostly during the summer season, although Mr. Melrose kept as many on throughout the winter as he could. They did gardening and other usual estate work. With the exception of the petitioner, Ketchum, none of them lived on the estate. Ketchum, on the other hand, was employed and paid by the month and, as a part of his employment, was furnished with a cottage upon the estate where he and his wife lived and provided table board for three of the estate employees. As he had a chauffeur's license, possibly seventy-five per cent of his time was devoted to work with the truck and the balance to odd jobs about the estate including gardening, carting wood to Mr. DeForest's house and taking care of the trunks, etc., in the spring and fall when Mr. and Mrs. DeForest moved from the city to the country or *vice versa.*

In paragraph " second " of his will the testator bequeathed to his superintendent, John G. Melrose, " if in my employ at the time of my death, the sum of $3,500." He bequeathed to the chauffeur,

Oscar Peterson, " if in our employ at the time of my death, a sum equal to $100 for each year or fraction of a year of employment." He then further provided: " To each household servant in our employ at the time of my death and who shall have been previously in our employ for three years or more, a sum equal to $50 for each year of employment."

The petitioner, Edward Ketchum, was employed by Mr. Melrose, the superintendent, in September, 1931, and was continuously employed from that time to testator's death, living with his wife in the cottage furnished to him upon the estate and performing the work above outlined. He claims to be entitled to a legacy under the last above quoted part of paragraph " second " of the will.

The question presented is whether, under the terms of that article of the will, viewed in the light of the circumstances, the petitioner was a household servant in the employ of the testator at the time of his death so that he was intended by the testator to be entitled to a legacy based upon the term of his employment.

The executors cite two comparatively recent decisions of the Court of Appeals which they claim will operate to defeat the petitioner's contention. (*Lafrinz* v. *Whitney*, 233 N. Y. 107; *Givens* v. *Whitney*, Id. 665.) In the will there involved the testator gave specific legacies to named persons if they should be in his employ at the time of his death, including the crew of his yacht, the superintendents of his country estates, his chauffeur and certain employees in his household in Georgia. He had a home in New York city and a country home in Ulster county, State of New York, and one in the State of Georgia. He then made further gifts of legacies to his employees who, at the time of his death, should be in his service and constantly employed " as part of my household in my house in New York City or in my country house in Ulster County, New York." The plaintiff in the *Lafrinz* case was a watchman, watching the exterior of the New York city house. The plaintiff in the *Givens* case was an electrician who lived on the Ulster county country estate, having charge of all the electrical equipment. The court pointed out that the testator had specifically named as legatees those who were not customarily employed as part of his household and then, in addition to the words " my household," used the words " in my house." The petitioner, therefore, seeks to distinguish those cases because the use of the additional words " in my house " limited the intended legatees to those actually in the house itself. However, the court further collected the various definitions of " household." They are as follows:

" An organized family and whatever pertains to it as a whole; a domestic establishment." (Century Dict.)

" Those who dwell under the same roof and comprise a family (a domestic establishment); family." (Webster's New International Dict.)

" Household " is equivalent to " Family." (*People* v. *Tait*, 261 Ill. 197; 103 N. E. 750.)

The court also referred to decisions of the English courts. Usually, those courts distinguished as between outside servants and inside servants. In case of a bequest to servants only, without confining it to household servants, it would seem that both outside and inside servants would be included.

In *Gatto* v. *Plant* (106 Conn. 236; 137 A. 764) the legacies were to " domestic servants " in testator's employ at the time of his death. The testator had a large estate with his own residence thereon and bungalows for his servants. The plaintiff was a gardener with no regular duties to perform in the testator's house, but lived in one of the bungalows on the estate. He was held to be a " domestic servant " within the meaning of the word as used in the will, the court pointing out that a domestic servant would ordinarily be defined as one whose work is so connected with the maintenance of his master's establishment, including the house and the land, that his duties, whether performed in or outside the house, relate to running that establishment and providing for the needs and comforts of the household.

Returning, then, to the instant case and the construction of article " second " of the will before the court, we find that, as usual, the cited authorities are not of great assistance because every will is different in some respect from every other will and, in every case, the surrounding circumstances are different. From what assistance may be gathered from the authorities cited and from a study of the will in the light of the circumstances, I have reached the conclusion that the petitioner is in a situation different from that of the other employees employed as such by the superintendent on the Cold Spring Harbor estate. Unlike the latter, the petitioner was furnished with a cottage on the estate where he and his wife resided and furnished table board for certain of the other employees. His hours were not fixed and, in addition to his operation of the truck, he supplied the house with wood, took care of taking in and out the trunks in spring and fall and did odd jobs generally whenever called upon. I think, therefore, a distinction should be made in his case and reach the conclusion that he was intended by the testator to be one of the household servants who should receive a legacy in a sum equal to fifty dollars for each year of employment, if in the testator's employment at the time of the latter's death.